UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 25-40132 |
| | ) | Chapter 13 |
| DANIEL LEE EPPINGA | ) | |
| aka Dan Eppinga | ) | |
| SSN/ITIN xxx-xx-6627 | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| V-BELT GLOBAL SUPPLY, LLC | ) | Adv. No. 25-4007 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| -vs- | ) | DECISION RE: |
| | ) | PLAINTIFF'S MOTION FOR |
| DANIEL LEE EPPINGA | ) | SUMMARY JUDGMENT |
| aka Dan Eppinga | ) | |
| | ) | |
| Defendant. | ) | |

The matter before the Court is Plaintiff V-Belt Global Supply, LLC's unopposed Motion for Summary Judgment (doc. 29) and its supporting documents. The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §1334 and 28 U.S.C. §157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The Court enters these findings and conclusions pursuant to Fed.Rs.Bankr.P. 7052 and 9014(c).

**FACTS**

On May 21, 2025, Debtor-Defendant Daniel Eppinga ("Debtor") filed a chapter 13 bankruptcy. Before this filing, Debtor had been a party to years of state court litigation arising from business endeavors he had pursued with his brother Scott Eppinga ("Scott") and a third-party, Greg Lewis ("Lewis").[1] Debtor, Scott, and Lewis were at one time co-owners of V-Belt Global Supply, LLC ("V-Belt"), the plaintiff in this adversary proceeding.

[1] The state court litigation began in 2015, but the Third Amended Complaint in state court was dated June 5, 2018.

Debtor's chapter 13 plan was confirmed on September 9, 2025. As part of the plan, Debtor's membership interest in V-Belt was surrendered to V-Belt or Scott subject to any valid setoff rights or security interests in Debtor's distributions. Prior to plan confirmation, V-Belt filed a proof of claim for $12,866,025.00. V-Belt itemized its claim at $5,402,950.00 in principal and $7,463,075.00 in interest, which was accruing at $3,266.00 per day. V-Belt asserted its claim was "being adjudicated against numerous defendants including [Debtor] in the lawsuit captioned *Scott Eppinga v. Dan Eppinga, et al.,* Civ. 15-3082, Second Judicial Circuit, Minnehaha County, South Dakota."

On September 5, 2025, V-Belt commenced this adversary proceeding against Debtor, seeking the entry of judgment excepting the claims of V-Belt from any discharge which may be granted to Debtor in accordance with 11 U.S.C. §523(a)(4), as well as attorneys' fees, costs, and interest. V-Belt asserts Debtor owes it a debt "created by the fraud or defalcation while acting in a fiduciary capacity, embezzlement, and/or larceny of the Debtor." With the exception of admitting jurisdiction, that the allegations are a core proceeding, the identity of the parties, and acknowledging Debtor filed bankruptcy, Debtor denied "each and every" other allegation in the adversary complaint but asserted certain documents[2] filed in Minnehaha County state court "speak for themselves."

V-Belt filed a motion for summary judgment on May 7, 2026, accompanied by a brief, approximately 400 pages in exhibits, and a statement of undisputed material facts. Debtor did not respond to the motion for summary judgment.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(a); <u>McManemy v. Tierney</u>, 970 F.3d 1034,

[2] The certain documents consist of documents referred to in the Third Amended Complaint, answers, and responses filed in the Minnehaha County state court action.

1037 (8th Cir. 2020) (citing Phillips v. Mathews, 547 F.3d 905, 909 (8th Cir. 2008)). An issue of material fact is *genuine* if the evidence would allow the trier of fact to return a verdict for either party. Rademacher v. HBE Corp., 645 F.3d 1005, 1010 (8th Cir. 2011). A fact is *material* if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court considers the pleadings, discovery, and any affidavits when reviewing for summary judgment. Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013) (citing Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011)). The Court's function "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Tolan v. Cotton, 572 U.S. 650, 656 (2014) (quoting Anderson, 477 U.S. at 249).

The party moving for summary judgment bears the burden of showing the record does not contain a genuine issue of material fact and identifying the parts of the record which bear out this assertion. Handeen v. LeMaire, 112 F.3d 1339, 1346 (8th Cir. 1997) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Further, "[i]f the moving party is the plaintiff, it carries the additional burden of presenting evidence that establishes all elements of the claim." Ramette v. Al & Alma's Supper Club Corp. (In re Bame), 252 B.R. 148, 154 (Bankr. D. Minn. 2000).

Once the movant has met this burden, the non-moving party "must advance specific facts to create a genuine issue of material fact" to avoid summary judgment. F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997) (quoting Rolscreen Co. v. Pella Prods. of St. Louis, Inc., 64 F.3d 1202, 1211 (8th Cir. 1995)). If the non-moving party does not oppose the summary judgment motion, the court must still determine whether summary judgment is appropriate as a matter of law on that claim. Canada v. Union Elec. Co., 135 F.3d 1211, 1213 (8th Cir. 1997); see also Feickert v. Wheeler, 2022 WL 899531, at *3 (D.S.D. March 28, 2022). However, the evidence must be viewed in the light most favorable to the party opposing the motion. Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 258 (8th Cir. 1996) (citing Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 971 (8th Cir. 1994)). The non-moving party is

entitled to all reasonable inferences that can be drawn from the evidence without resorting to speculation. P.H. v. Sch. Dist. of Kansas City, Mo., 265 F.3d 653, 658 (8th Cir. 2001) (quoting Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1110 (8th Cir. 2001)).

**II. 11 U.S.C. §523(a)(4)**

In its complaint, V-Belt seeks a determination that the debt owed to it by Debtor cannot be discharged pursuant to 11 U.S.C. §523(a)(4). "Section 523(a)(4) of the Federal Bankruptcy Code provides that an individual cannot obtain a bankruptcy discharge from a debt 'for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.'" Bullock v. BankChampaign, N.A., 569 U.S. 267, 269 (2013) (quoting 11 U.S.C. §523(a)(4)). The Eighth Circuit construes these exceptions narrowly. Reshetar Systems, Inc. v. Thompson (In re Thompson), 686 F.3d 940, 944 (8th Cir. 2012). "The creditor bears the burden of proof in a proceeding to determine the dischargeability of a debt under §523(a)(4)." Goldstein v. Diamond (In re Diamond), 530 B.R. 451, 455 (B.A.P. 8th Cir. 2015) (internal citations omitted).

**A. Fraud or defalcation while acting in fiduciary capacity**

To succeed on its section 523(a)(4) argument based upon fraud or defalcation while Debtor was acting in a fiduciary capacity, V-Belt must show: (1) a fiduciary relationship existed between Debtor and V-Belt, and (2) Debtor committed fraud or defalcation in the course of that fiduciary relationship. U.S. Dep't of Labor v. Harris (In re Harris), 898 F.3d 834, 842 (8th Cir. 2018) (quoting Jafarpour v. Shahrokhi (In re Shahrokhi), 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001)).

V-Belt referenced multiple documents in its pleadings but relied heavily upon the Third Amended Complaint (the "TAC") and Debtor's Answer to the TAC, both filed in the state court litigation; the V-Belt Global Supply, LLC, Ownership Agreement dated February 12, 2013 (the "Ownership Agreement"); V-Belt's Board of Directors Resolution Authorizing Issuance of Stock to a Specific Person dated August 13, 2009 (the "Stock Issuance Agreement"); V-Belt's disbursement

agreement (the "Disbursement Agreement"); and the Expert Report of Kaustuv Chakrabarti, CFA, CFE, CVA dated October 2, 2023 (the "expert report" or the "report"). In Debtor's Answer to the TAC, he admits entering into the Ownership Agreement and allows the document to speak for itself and also admits the Stock Issuance Agreement can speak for itself but states it is no longer in effect after the Ownership Agreement was issued. Debtor also admits in his deposition that he signed the Disbursement Agreement, but states in his Answer to the TAC that Scott never signed the Disbursement Agreement and delivered it to V-Belt or its officers. Last, the expert report relied on many exhibits and considered multiple documents which were neither provided nor authenticated for the Court to consider as proper evidence. Of the documents the expert considered in his report, there were a total of 19 full depositions and substantial parts of 6 others that were not provided with the report or to the Court in any manner. There were also exhibits, QuickBooks data, and other financials attached to the report that were not properly authenticated. These deficiencies create issues concerning V-Belt's entitlement to summary judgment.

With respect to the first element, "[w]hether a relationship is a 'fiduciary' one within the meaning of §523(a)(4) is a question of federal law." In re Harris, 898 F.3d at 842 (quoting In re Thompson, 686 F.3d at 944). Under this circuit's precedent, the term 'fiduciary' in §523(a)(4) "refer[s] only to trustees of 'express trusts.'" In re Harris, 898 F.3d at 842 (quoting Hunter v. Philpott, 373 F.3d 873, 875 (8th Cir. 2004)). The court has observed "[t]he fiduciary relationship reflected in an express or technical trust is typically created by contract." Arvest Mortg. Co. v. Nail (In re Nail), 680 F.3d 1036, 1039-1040 (8th Cir. 2012). "It is the substance of a transaction, rather than the labels assigned by the parties, which determines whether there is a fiduciary relationship for bankruptcy purposes." Id. at 1040 (quoting Barclays Am./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 878-79 (8th Cir. 1985)).

In Debtor's Answer to the TAC, he admits owing a fiduciary duty to V-Belt "with the qualification that Scott Eppinga was invited to all member meetings but chose not to attend." Debtor's admission in his Answer establishes a fiduciary relationship between Debtor and V-Belt. Further, the Ownership Agreement identifies Debtor, Scott, and Lewis as members of V-Belt and contains language in Section 10.1 regarding the members' fiduciary duties. Debtor's admission of his fiduciary duty combined with Section 10.1 of the Ownership Agreement proves the first element of section 523(a)(4): a fiduciary relationship existed between Debtor and V-Belt.

To satisfy the second element of section 523(a)(4), V-Belt must show Debtor's conduct during the course of the fiduciary relationship constituted defalcation or fraud. The definition of defalcation begins with the "misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds." Tudor Oaks Ltd. Pshp. v. Cochrane (In re Cochrane), 124 F.3d 978, 984 (8th Cir. 1997) (citing Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1186 (9th Cir. 1996)). In addition, this misappropriation must occur with the requisite mindset, more than a negligent mistake. Bullock, 569 U.S. at 277 (articulating a "heightened standard" and remanding case where "objective recklessness" had been applied by lower court). To satisfy the heightened scienter requirement for defalcation, the misappropriation or failure to account for trust funds must be either intentional or "of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." Id. at 274. (internal citation omitted).

V-Belt may prove defalcation if it can show Debtor acted intentionally or with gross recklessness in creating the alleged debt owed to V-Belt. V-Belt produced an expert report and excerpts of depositions and exhibits from state court in support of its position. The report, which is authenticated by an affidavit from its author, Kaustuv Chakrabarti, identifies damages arising from several sources, including lost

income arising from the following entities, which, according to the allegations, were formed individually or jointly by Debtor and Lewis while they were co-owners of V-Belt and owed fiduciary duties to V-Belt: MVP Industrial Supply, LLC ("MVP"); Power Drive Holdings, LLC; Global Branding Technologies, Inc.; and Commerce Service Group Inc. The report further alleged damages that arose from the cost of goods (purchased by V-Belt from MVP and Power Drive) that lacked supporting documentation, potential personal expenses of Debtor, a loan obligation incurred by V-Belt for Debtor's personal benefit, and unnecessary rent payments owed by V-Belt under a lease it assumed from Power Drive.

However, V-Belt cannot prove these genuine material facts are undisputed with the expert report when a number of the documents the expert considered are not provided and when some of the documents are not properly authenticated. In addition, there are inconsistencies between V-Belt's arguments and some of the deposition excerpts. For instance, Debtor asserts the Stock Issuance Agreement V-Belt relies on for part of its argument was overridden by the Ownership Agreement. Debtor also stated during his deposition the re-marking of the purchase price on the belts, which MVP did for V-Belt, was for "a lesser price than the process that Power Products was doing the same type of work for us." Although the expert report references this deposition and excerpt, the report disregards the other supplier's allegedly higher price and estimates a loss to V-Belt based on the possibility that the marking up "could have been performed by V-Belt, which would have enabled V-Belt to avoid MVP's price markup." Because Mr. Chakrabarti's report relies upon potential misstatements and other material facts that are disputed or not properly before the Court, the value of the claim remains in dispute. The report also expressly states it offers no opinions regarding liability issues in this litigation.

The determination of whether Debtor's conduct constitutes defalcation hinges on the nature of the obligations Debtor owed to V-Belt and, whether at each relevant time, Debtor acted with the requisite intent or gross recklessness so his conduct constituted a breach of his fiduciary duty. V-Belt may have proven sloppy business

practices undertaken by Debtor, but the Court is unable to discern from the record if Debtor's conduct was intentional or a gross deviation from the standard of conduct of a law-abiding person in Debtor's situation. The Court finds genuine issues of material fact exist as to defalcation or fraud.

**B. Embezzlement**

V-Belt also argues Debtor is not entitled to discharge the debt he owes to V-Belt because Debtor obtained it through embezzlement under section 523(a)(4). "Embezzlement, for purposes of section 523(a)(4), is the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." In re Thompson, 686 F.3d at 947 (quoting In re Nail, 680 F.3d at 1042). This Court has previously recognized that intent is an element of embezzlement under section 523(a)(4) and been unwilling to make a summary determination of embezzlement where intent is not clear from the record. First Dakota National Bank, N.A. v. James J. Scoblic (In re Scoblic), Bankr. No. 04-40923, Adv. No. 04-4071, slip op. at 7-8 (Bankr. D.S.D. May 18, 2005) (citing United States v. One 1989 Jeep Wagoneer, 976 F.2d 1172, 1176 (8th Cir. 1992)).

V-Belt supports its position with the expert's report previously discussed herein. In the report, the expert identifies various pieces of V-Belt property entrusted to Debtor, who was elected President of V-Belt in 2010, and appears to have had lawful control over V-Belt property during those relevant times. Those pieces of property include funds of V-Belt used to pay consulting fees to Debtor's consulting company, fees to incorporate one of Debtor's companies, "marked-up or inflated" rates, the purchase price of a building, unnecessary lease payments, a loan for Debtor's personal use, personal expense reimbursements to Debtor with no supporting documentation, and others.

However, V-Belt cannot prove the existence of undisputed genuine material facts with the expert report when a number of the documents the expert considered are not provided, some of the documents are not properly authenticated, and when there are inconsistencies in V-Belt's arguments based upon the expert report and the

excerpts from the depositions. V-Belt relies upon the expert report to prove fraudulent intent, but the report is based upon material facts that are disputed or not properly before the Court. Therefore, intent is not clear from the record and V-Belt has failed to meet its burden of proof in regard to its embezzlement claim against Debtor under section 523(a)(4).

**C. Larceny**

V-Belt briefly argues its claim against Debtor is non-dischargeable because the Debtor committed "larceny" under section 523(a)(4). This Court addressed the elements of larceny under section 523(a)(4) in Cheryl Reed v. Lloyd C. Johnson (In re Johnson), Bankr. No. 05-30023, Adv. No. 05-3004, slip op. (Bankr. D.S.D. May 30, 2006). See also Mitchell v. Iverson (In re Mitchell), 2007 WL 1302652, at *5 (Bankr. D.S.D. Apr. 30, 2007). As a sister court has explained, "[t]he essential difference between larceny and embezzlement is the manner in which property comes into the possession of the person charged. Embezzlement involves a lawful or authorized possession. In the case of larceny, however, the original taking and possession is unlawful." Eletech, Inc. v. Jones (Matter of Jones), 648 B.R. 371, 385 (Bankr. D. Neb. 2022) (citing Rech v. Burgess (In re Burgess), 106 B.R. 612, 622 (Bankr. D. Neb. 1989)). See also Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993) (concluding larceny did not apply where original possession was lawful).

Because the allegations in this case relate to property V-Belt entrusted to Debtor as president of the company, the analysis under "embezzlement" is more appropriate, which V-Belt recognized in its brief. Because the alleged original takings and possession of V-Belt property by Debtor were lawful, larceny does not apply here.

## CONCLUSION

V-Belt has failed to meet its burden of proof under 11 U.S.C. §523(a)(4), and genuine issues of material fact remain. As such, V-Belt is not entitled to judgment

as a matter of law. The Court will therefore enter an order denying V-Belt's motion for summary judgment, and a second pre-trial conference will be scheduled.[3]

So ordered: September 17, 2026.

BY THE COURT:

Laura L. Kulm Ask
Bankruptcy Judge

[3] With over a ten-year history in state court regarding this alleged debt between the parties and, as a result, it appearing the matter would be more trial ready in state court, V-Belt may wish to seek relief from the automatic stay and return to state court to properly determine the debt owed to it by Debtor and then return to this Court to properly determine if such debt is nondischargeable.